UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ATI SPECIALTY MATERIALS, LLC,

    Plaintiff,

v.

JP TECHNOLOGY INC.,

    Defendant.

No. 1:23-cv-01018

**OPINION**

**APPEARANCES**:

Lisa Carney Eldridge
CLARK HILL PLC
2001 Market Street
Two Commerce Square
Suite 260
Philadelphia, PA 19103

    *On behalf of Plaintiff.*

Kevin Kerveng Tung
136-20 38th Avenue
Suite 3D
Flushing, NY 11354

    *On behalf of Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on a Motion for Summary Judgment by Defendant JP Technology Inc. ("Defendant"), (ECF No. 85), and a Cross-Motion for Summary Judgment by Plaintiff ATI Specialty Materials, LLC ("Plaintiff"), (ECF No. 91). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, Defendant's Motion for Summary Judgment is **DENIED** and Plaintiff's Cross-Motion for Summary Judgment is

**DENIED**.

I. **BACKGROUND**[1]

This matter arises from a disputed purchase order between the parties. Plaintiff—a wholly owned subsidiary of Allegheny Technologies Inc. ("ATI CORP.")—is a producer and supplier of specialty metals. (Def. SOMF, ECF No. 85 at ¶ 1). In connection with its business operations, Plaintiff required Hafnium, a ductile metal and chemical element. (*Id*.). Defendant manufactures and supplies Hafnium Crystal Bars. (*Id*. at ¶ 3). Non-party Westinghouse Electric Company LLC ("Westinghouse") produces Hafnium Sponges—raw materials needed to produce Hafnium—and thus was a major source of the raw materials Defendant needed to manufacture Hafnium Crystal Bars. (*Id*. at ¶ 4).

In 2021, Plaintiff approached Westinghouse expressing an interest in purchasing Hafnium. (*Id*. at ¶ 5). Westinghouse referred Plaintiff to Defendant and designated its Regional Vice President, Han Zhou ("Zhou"), as the contact person between Plaintiff and Defendant. (*Id*. at ¶¶ 5–7). Until Zhou's departure from Westinghouse in February 2022, all communications between Plaintiff and Defendant occurred between Plaintiff and Zhou. (*Id*.).

In March 2021, Defendant and ATI CORP. entered into a Confidentiality Information Exchange Agreement, which named Plaintiff as a third-party recipient of confidential information and named Zhou for notice purposes only. (*Id*. at ¶¶ 7–8). After signing this Agreement, Defendant sent its first shipment of 200 pounds of Hafnium to Plaintiff in April 2021. (*Id*. at ¶ 9). Zhou's role in the ensuing transactions between the parties included being involved in Westinghouse's supply of Hafnium Sponges to Defendant and acting as a "translator for pricing negotiating with

---

[1] The facts set forth herein are undisputed unless otherwise noted.

[Plaintiff]." (*Id*. at ¶ 10). Ultimately, however, the negotiations of the terms and conditions of the purchase orders was exclusively conducted by Zhou and Plaintiff. (*Id*. at ¶ 11).

On August 5, 2021, Plaintiff submitted an order to Zhou for 5,600 pounds of Defendant's Hafnium ("the Purchase Order"). (*Id*. at ¶ 12). The Purchase Order called for monthly shipments of 700 pounds from October 2021 through May 2022 at a unit price of $360 per pound for a total of $2,016,000. (*Id*.). The Purchase Order was issued to Zhou at Westinghouse. (*Id*. at ¶ 14). Defendant claims it was never provided with the Purchase Order. (*Id*. at ¶ 15). Defendant also claims that Zhou merely requested it provide the shipments of Hafnium, which it did. (*Id*.). Although the initial November 2021 shipment was paid for by Plaintiff, Plaintiff failed to pay for the January 2022 shipment. (*Id*. at ¶ 17).

After Zhou left Westinghouse in February 2022, Defendant claims it was informed for the first time of unfulfilled shipments to Plaintiff and the existence of the Purchase Order. (*Id*. at ¶ 18). On April 1, 2022, Defendant received a letter from Plaintiff's Deputy General Counsel informing Defendant of its purported breach of the Purchase Order. (*Id*. at ¶ 19). Upon reviewing the Purchase Order, Yanchun Bi, Defendant's Chief Executive Officer, denied that it had ever consented to or confirmed the Purchase Order. (*Id*. at ¶¶ 19–20). Though Defendant was willing to fulfill the installments at a higher price than set forth in the Purchase Order, Plaintiff insisted that it had a binding contract with Defendant which controlled. (*Id*. at ¶¶ 18, 20). As the parties were unable to reach an agreement in this regard, Defendant did not make the remaining shipments under the Purchase Order. (*Id*. at ¶ 23).

As a result, Plaintiff filed suit asserting a claim for breach of contract ("Count One") and alternatively, for promissory estoppel ("Count Two"). (Compl., ECF No. 1). In response, Defendant filed counterclaims for breach of contract and unjust enrichment. (Answer, ECF No. 7).

I.  **PROCEDURAL HISTORY**

On February 21, 2023, Plaintiff filed its Complaint. (ECF No. 1). On December 11, 2024, Defendant filed its Motion for Summary Judgment, (ECF No. 85), which Plaintiff opposed in its Cross-Motion for Summary Judgment on January 24, 2025. (ECF Nos. 89, 91). Defendant filed opposition to the Cross-Motion and a reply to its Motion on February 20, 2025. (ECF No. 94). Plaintiff filed a reply to its Cross-Motion on March 14, 2025. (ECF No. 99).

II.  **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56, a court shall grant summary judgment when "a movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in [her] favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once met, the burden shifts to the nonmoving party to "go beyond the pleadings and by [her] own affidavits, or by the depositions, answers to interrogatories, and

admissions on file, designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED. R. CIV. P. 56(a)). To withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249–50). Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322.

### III.    **DISCUSSION**[2]

Defendant moves for summary judgment on the grounds that no enforceable contract was formed, and that Plaintiff's promissory estoppel claim is legally and factually deficient. Defendant contends that there was no meeting of the minds because it never received, acknowledged, or approved the Purchase Order prior to its alleged formation, and Plaintiff made no attempt to confirm the agreement with Defendant despite possessing direct contact information for Defendant's executives. (Def.'s Br., ECF No. 85 at 1–2, 13–14). Defendant further asserts that Zhou lacked both actual and apparent authority to bind Defendant to any contractual obligation, and that Plaintiff's reliance on Zhou's representations was unreasonable considering established industry practices and Plaintiff's own internal knowledge that Zhou was not acting on Defendant's behalf. (*Id*. at 5–12). Defendant also argues that Plaintiff acted in bad faith by seeking

---

[2] The parties both cite to New Jersey law in its briefing and as such, the Court does as well. Indeed, Plaintiff specifically notes that because there is no true conflict between the possible relevant state laws, Plaintiff cites to New Jersey law as Defendant did in its briefing. (Pl.'s Br., ECF No. 90 at 13).

5

to enforce a below-market, long-term supply contract without first pursuing alternative suppliers. (*Id*. at 15–16). Finally, Defendant maintains that the promissory estoppel claim fails because the doctrine is not recognized as a cause of action under New Jersey law and, in any event, Plaintiff cannot demonstrate that Defendant made any promise upon which Plaintiff reasonably relied to its detriment. (*Id*. at 17–18).

In response, Plaintiff cross-moves for summary judgment, contending that the undisputed facts establish the formation of an enforceable contract and Defendant's subsequent breach. (Pl.'s Br., ECF No. 90 at 1–2). Plaintiff argues that Zhou had actual authority to accept the Purchase Order on Defendant's behalf, citing Zhou's designation as a notice party in a Confidentiality Agreement which was signed by a board member for Defendant for the express purpose of facilitating contract negotiations between the parties. (*Id*. at 5–7, 15–17). Plaintiff further asserts that Zhou had apparent authority based on Defendant's conduct, including public identification of Zhou as its sales contact, communications indicating Zhou's role in pricing negotiations, and Defendant's failure to repudiate Zhou's involvement during the initial shipments. (*Id*. at 7–10, 17–20). Plaintiff also contends that Defendant accepted and confirmed the Purchase Order through performance by shipping two installments of Hafnium, invoicing Plaintiff, and accepting payment. (*Id*. at 7–9, 20–22). Plaintiff maintains that Defendant ratified the contract through subsequent communications from Bi, who repeatedly affirmed Defendant's obligation to fulfill the remaining shipments. (*Id*. at 10, 22–23). Plaintiff alternatively invokes promissory estoppel, arguing that it reasonably relied to its detriment on Defendant's clear promises of performance. (*Id*. at 23–24). Finally, as to Defendant's Motion for Summary Judgment as to its counterclaims related to payment due, Plaintiff asserts it is entitled to set off the unpaid invoice for the second shipment against the damages it incurred due to Defendant's breach. (*Id*. at 25).

1. Breach of Contract

To prevail on a claim for breach of contract under New Jersey law, a plaintiff must establish four elements: (1) the parties entered into a valid contract; (2) the plaintiff performed its contractual obligations; (3) the defendant failed to perform its obligations; and (4) the plaintiff suffered damages as a result of the breach. *Benjamin Moore & Co. v. B.M. Mediterranean S.A.*, No. 21-04328, 2024 WL 4589778, at *3 (D.N.J. Oct. 28, 2024) (citing *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021)); *Tryp Hotels Worldwide, Inc. v. Sebastian Hotel, LLC*, 726 F. Supp. 3d 373, 394 (D.N.J. 2024). A valid contract, in turn, requires mutual assent, consideration, legality of object, capacity of the parties, and the requisite formality. *Interlink Grp. Corp. USA v. Am. Trade & Fin. Corp.*, No. 12-6179, 2014 WL 3578748, at *5 (D.N.J. July 18, 2014) (citing *Cohn v. Fisher*, 287 A.2d 222, 224 (N.J. App. Div. 1972)). The parties must agree on the essential terms and demonstrate an intent to be bound. *Vision Pharma, LLC v. Sunrise Pharm., Inc.*, No. 13-04692, 2022 WL 4550143, at *4 (D.N.J. Sept. 29, 2022) (citation omitted).

Critically, whether a contract was formed is a question of fact. *Id*. That fundamental question is sharply contested here. Plaintiff contends that a contract was formed because Zhou had actual or apparent authority to bind Defendant, or because Defendant began performance under the terms Zhou negotiated. Defendant denies that Zhou had any authority to enter into a contract and claims its shipments were sent solely at Zhou's direction, without knowledge of the underlying agreement.

Apparent authority exists where the principal, through its conduct, "placed the agent in such a situation that a person of ordinary prudence, conversant with general business practice, is justified in believing that the agent had authority to perform the act in question." *Sylvan Learning Sys., Inc. v. Gordon*, 135 F. Supp. 2d 529, 545 (D.N.J. 2000) (citation omitted). "[T]o demonstrate apparent authority, the plaintiff must establish the conduct of the alleged principal created the

7

appearance of authority and a third party reasonably relied on the apparent authority of the agent to act for a principal." *Id.* (citation omitted). However, "[w]hether an agent is cloaked with apparent authority is a factual question." *Automated Salvage Transp., Inc. v. NV Koninklijke KNP BT*, 106 F. Supp. 2d 606, 618–19 (D.N.J. 1999) (citing *Gizzi v. Texaco, Inc.,* 437 F.2d 308, 310 (3d Cir. 1971)).

On the present record, there are genuine disputes of material fact concerning whether Defendant's conduct created the appearance that Zhou had authority. Specifically, the Confidentiality Agreement listed Zhou as a party on notice and by all accounts, Zhou was the main and only point of contact for Plaintiff. (Def.'s SOMF, ECF No. 85 at ¶ 8). Additionally, during negotiations between Plaintiff and Zhou as to the Purchase Order, Zhou made the following representations, "[Defendant] is reviewing the details and will get back to you," "they are good with this PO," and when asked by Plaintiff if the order was confirmed, Zhou said "confirmed and accepted." (Qi Cert., Def.'s Br., ECF No. 85, Exh. 11). Following these representations, Defendant made two shipments under the Purchase Order. (Def.'s SOMF, ECF No. 85 at ¶ 15).

Defendant asserts it made those shipments only at Zhou's direction and without ever communicating directly with Plaintiff. (Bi Dep., Def.'s Br., ECF No. 85, Exh. 15 at 89:15–90:22). Indeed, Westinghouse—where Zhou worked—had issued the invoices for the Purchase Order. (Def.'s SOMF, ECF No. 85 at ¶ 14; Pl.'s Responses to Def.'s SOMF, ECF No. 95 at ¶ 15). Though Defendant, through Bi, *did* send the second invoice. (*Id.*). However, Bi testified he did not receive the Purchase Order until April 2022, and that he only looked at the quantity and price in the invoice, as the invoices were prepared by Zhou at Westinghouse. (Pl.'s Responses to Def.'s SOMF, ECF No. 95 at ¶ 15; Bi Dep., Def.'s Br., ECF No. 85, Ex. 15 at 91–97).

Thus, while *Plaintiff and Zhou* appear to have reached an agreement on the terms of the

Purchase Order, the central questions—whether Defendant was aware of or agreed to those terms, and whether Zhou had authority to bind Defendant—remain disputed. Plaintiff's reliance on the theory that Defendant nevertheless became bound by its performance under the Purchase Order's Terms & Conditions is insufficient to resolve these issues as a matter of law. The key factual disputes are whether Defendant was even aware of the Purchase Order before performance began and whether Zhou had authority—actual or apparent—to contract on Defendant's behalf. Because all of these questions are factual in nature and genuinely disputed, the Court cannot grant summary judgment for either party as to Plaintiff's claims.

2. Promissory Estoppel

In New Jersey, promissory estoppel requires: "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Goldfarb v. Solimine*, 245 A.3d 570, 577–78 (N.J. 2021) (citing *Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington*, 944 A.2d 1 (N.J. 2008)). "This Court has long emphasized that promissory estoppel is 'a departure from the classic doctrine of consideration that the promise and the consideration must purport to be the motive each for the other,' providing instead that the operative 'reliance is on a promise.'" *Id*. (citing *Friedman v. Tappan Dev. Corp.*, 126 A.2d 646 (N.J. 1956)).

The same factual disputes that preclude summary judgment on the breach of contract claim also preclude summary judgment on Plaintiff's promissory estoppel theory. Here, Plaintiff's promissory estoppel claim is based on the same course of conduct that underlies its breach of contract claim—namely, Zhou's representations during negotiations and Defendant's subsequent performance. Plaintiff asserts that Zhou, and later Bi, made assurances that Defendant had accepted the Purchase Order, that Plaintiff relied on those assurances, and that it suffered economic harm as a result. (Pl.'s Br., ECF No. 90 at 23–24). Whether Plaintiff's reliance was reasonable,

however, turns in large part on whether it was justified in believing that Zhou had the authority—actual or apparent—to act on behalf of Defendant.

As explained above, the record contains conflicting evidence on that point. Zhou acted as the sole intermediary between Plaintiff and Defendant, represented that Defendant had reviewed and accepted the Purchase Order, and coordinated two shipments under that order. (Qi Cert., Def.'s Br., ECF No. 85, Exh. 11; Def.'s SOMF, ECF No. 85 at ¶ 15). But Defendant maintains that it was unaware of the terms, did not authorize Zhou to make binding promises on its behalf, and sent shipments only at Zhou's direction. (Pl.'s Responses to Def.'s SOMF, ECF No. 95 at ¶ 15; Bi Dep., Def.'s Br., ECF No. 85 at 91–97). These facts raise a genuine dispute as to whether Plaintiff could reasonably rely on Zhou's statements and conduct as the promises of Defendant and whether Defendant, through its conduct, created the appearance that Zhou had authority to bind the company.

Accordingly, because the existence, clarity, and legal effect of the alleged promises—and Plaintiff's reliance on them—depend on disputed facts concerning Zhou's authority and Defendant's conduct, summary judgment on the promissory estoppel claim is likewise inappropriate. These issues must be resolved by the factfinder.

3. Defendant's Counterclaims

First, it is unclear whether Defendant is moving for summary judgment on its counterclaims as Defendant fails to include any reference to them in its Notice of Motion. Instead, in Defendant's brief in support of its Motion, Defendant summarily states that it seeks summary judgment on its counterclaims against Plaintiff without offering much factual support or addressing any of the related legal issues. (Def.'s Br., ECF No. 85 at 2, 18). For example, Defendant fails to address the impact, if any, of a denial of summary judgment on Plaintiff's affirmative claims—as is the case here—on its counterclaims. Defendant further fails to address

its unjust enrichment claim in the event that the Court did not find that the parties entered into a contract. In addition to Defendant's deficient briefing on its counterclaims, the counterclaims related to the unpaid invoice are so intertwined with the disputed Purchase Order that, for all the same reasons set forth above, the Court cannot decide the issues on summary judgment. As such, to the extent Defendant seeks summary judgment on its counterclaims, Defendant's Motion is denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **DENIED**, (ECF No. 85), and Plaintiff's Cross-Motion for Summary Judgment is **DENIED**, (ECF No. 91). An appropriate Order accompanies this Opinion.

**CHRISTINE P. O'HEARN**
**United States District Judge**